IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NTIRETY, INC. | § | CASE NO. |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | ORIGINAL COMPLAINT |
| INSIGHT SERVICE GROUP, INC. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiff Ntirety, Inc. files this Original Complaint and respectfully would show the Court as follows:

### I.   JURISDICTION AND VENUE

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the District.

3. In addition, jurisdiction and venue are proper in this Court because the parties' operative agreement states that "[t]he Parties consent to the jurisdiction of the federal or state courts located in Austin, Texas for all disputes between the Parties, and venue will be proper in any such court. Neither Party will contest notice from any such court."

## II.     PARTIES

4. Plaintiff Ntirety, Inc. is a Delaware corporation with its principal offices located in Austin, Texas.

5. Defendant Insight Service Group, Inc. is a Massachusetts corporation with its principal offices located in Danvers, Massachusetts.

## III.     BACKGROUND

6. On January 27, 2023, Defendant engaged Plaintiff to provide managed IT services by executing a Service Order Form ("SOF"). **Exhibit 1**. The SOF is part of, and governed by, a Master Services Agreement ("MSA," and collectively, with the SOF, the "Agreement"). **Exhibit 2**. The Agreement's term is three years from the date of execution. Accordingly, the Agreement expires by its terms on January 26, 2026.

7. The Agreement provides for both termination for cause and termination for convenience. Specifically, Paragraph 4.2 provides:

> Termination for Convenience. Unless otherwise stated in the SOF or SOW, Client may terminate a SOF or SOW in whole or in part for convenience at any time by providing Ntirety with 90 calendar days' prior written notice and payment of the applicable Termination Fee. Termination of all SOFs and SOWs will be deemed a termination of the MSA in their entirety subject to the survival clauses specified therein and below.

8. Termination for cause is addressed in Paragraph 4.3 which states, in part:

> Termination for Cause. Either Party may terminate this MSA and/or the SOF or SOW upon written notice to the other Party, in the event that:
>
> (a) Such other Party breaches a material obligation of the SOF or

2

SOW or this MSA and (i) such breach is not cured within 30 calendar days (or 10 business days in the case of non-payment by Client) following the breaching Party's receipt of written notice from the non-breaching Party, in which case such termination will be effective as of the end of such 30 calendar day period (or 10 business day period in the case of non-payment by Client) or (ii) such breach is incurable, in which case such termination will be effective upon the breaching Party's receipt of written notice from the non-breaching Party.

9. The termination fee referenced in Paragraph 4.2 is detailed in Paragraph 4.4:

Termination Fee. In the event that Ntirety terminates this Agreement or any particular SOF or SOW pursuant to Section 4.3(a) or Client terminates pursuant to Section 4.2, Client will pay the Termination Fee to Ntirety within 5 days of the termination date. Client acknowledges and agrees that (i) Ntirety uses the contractual commitments of its customers, including Client, to make its own commitments to capacity and growth, including making significant capital expenditures, (ii) the amount of the Termination Fee is a reasonable approximation of the damages that Ntirety will suffer due to Client's early termination, and (iii) this provision is a material inducement to Ntirety entering into this MSA.

10. Plaintiff provided services to Defendant under the Agreement. From January 27, 2023 until early January 2025, Plaintiff received no communication from Defendant complaining about Plaintiff's service performance. Plaintiff received no requests to cure any alleged issues with the services provided.

11. On January 8, 2025, Plaintiff received a "Notice of Breach" from Defendant which claimed that Plaintiff had breached its material obligations under the Agreement and the breach was "incurable." **Exhibit 3**. The notice did not identify what the alleged material breach of the Agreement may have been.

12. On January 15, 2025, Defendant's CEO, Bob Reardon, spoke with Plaintiff's

CEO, Jim Parks, and alleged that there had been repeated, unresolved service issues. Mr. Parks agreed to investigate Defendant's claim.

13. On January 24, 2025, after a full and thorough investigation of Defendant's account, Mr. Park's wrote to Defendant and advised that Plaintiff had no record of any service delivery failures or complaints received from Defendant regarding Plaintiff's services. As a result, Mr. Park's advised that Plaintiff did not consider Defendant's termination to be an effective termination for cause. However, Mr. Park's offered to work with Defendant to negotiate a mutually acceptable termination solution.

14. On January 27, 2025, Defendant responded by email and advised Plaintiff that it rejected Mr. Park's offer to negotiate an agreeable termination and offered to pay Plaintiff $164,858.29, which was less than the amount owed on invoices sent to Defendant before Plaintiff's receipt of the termination notice.

15. Plaintiff countered that it would waive payment of the outstanding invoices and accept payment of just the Termination Fee in the amount of $524,478.99.

16. The parties continued to discuss possible resolutions until April of 2025 when Plaintiff received a letter from Defendant's counsel alleging that Plaintiff's alleged breaches of the Agreement dated back to January 2023 and threatening to hold Plaintiff responsible for any alleged damage suffered by Defendant because of the alleged breach.

17. Because Plaintiff was never made aware of any alleged breaches of the Agreement, it never had the opportunity to cure such breaches. Accordingly, Defendant's claim that the alleged breaches are insurable is disingenuous at best. Defendant cannot fail

4

to inform Plaintiff of the alleged breaches, wait for a lengthy period, and then claim the breaches are incurable because they were not corrected. Plaintiff cannot remedy issues it never knew existed.

18. Defendant has tried to avoid paying, and has refused to pay, the contractually required Termination Fee by claiming that its termination was for cause rather than for convenience. However, the facts do not support Defendant's claim. Simply stated, Defendant has breached the agreement by refusing to pay the Termination Fee and the outstanding invoices for services provided.

19. At best, Defendant's termination notice received by Plaintiff on January 8, 2025 was a termination for convenience. Under the terms of the Agreement, the termination would be effective in 90 days, or April 8, 2025. Contractually, Defendant owes Plaintiff for all services provided under the Agreement through April 8, 2025, and the Termination Fee calculated as of April 8, 2025. The total amount owed for services is $271,204.23. The Termination Fee, calculated based on the April 8 termination date, is $422,639.30.

## IV. CAUSES OF ACTION
### COUNT 1
### Breach of Contract

20. Plaintiffs incorporate by reference the above and foregoing paragraphs 1-16.

21. Under Texas law, a breach of contract action requires proof of four elements: (1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages because of the breach. *See S&S Emergency Training Sols., Inc. v.*

5

*Elliott*, 564 S.W.3d 843 (Tex. 2018).

22. Here, it is undisputed that the parties entered into the Agreement. Plaintiff performed under the Agreement. Defendant breached the Agreement by terminating the Agreement without cause and failing to pay the Termination Fee as required by Paragraphs 4.2, 4.4 of the Agreement.

23. Because of Defendant's breach, Plaintiff has been damaged in the amount of the Termination Fee and outstanding invoices.

## V.    DAMAGES
### Actual Damages

24. As a result of Defendant's actions, Plaintiff have suffered actual damages of approximately $693,843.53.

### Attorney Fees

25. Pursuant to the express terms of the Agreement and Texas Civil Practice & Remedies Code 38.001(b)(1), (2), and (8), Plaintiff is entitled to recover their necessary and reasonable attorney fees and court costs.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff Ntirety, Inc. respectfully ask the Court to find Defendant liable on all causes of action and award Plaintiff the following:

1. Actual damages in the amount of $693,843.53;
2. Prejudgment interest and Post judgment interest at the maximum rates allowed by law;
3. Reasonable and necessary attorney fees and costs of court; and

4. All other and further relief to which Plaintiffs are entitled.

Dated July 31, 2025.

                      Respectfully submitted,

                      By:/s/ *Mark E. Smith*
                          Mark E. Smith, Attorney-in-Charge
                          State Bar No. 24070639
                          Federal Bar No. 1107457
                          msmith@bn-lawyers.com
                          Kelly G. Combs
                          State Bar No. 24126647
                          Federal Bar No. 3872591
                          kcombs@bn-lawyer.com
                          7320 N. MoPac Expy., Suite 400
                          Austin, TX 78731

                          **ATTORNEYS FOR PLAINTIFF**